Good morning, Your Honor. Sorry, Hildes? Yes, Lawrence Hildes, appearing for plaintiff appellants. And just to briefly summarize, this case comes up on appeal from a denial of a JNOV motion for a new trial from Judge Lodge in Idaho following a jury trial on Fourth and First Amendment issues and liability. I was going through the issues yesterday with my crim pro professor, because this is the first time I've ever argued in front of this body. And I know of no case, I'm starting with Kroll, because I think there's more to argue as far as Kroll, where a probable cause to search or to arrest is based on refusal to submit to a search, which is essentially what defendants argued in trial and what respondents argue now. OK, Mr. Hildes, here's my difficulty, and I'll just get right to it. It'll let you address it during your argument. And by the way, I should say welcome coming here from Bellingham and to your colleague coming here from Coeur d'Alene.  So here's my my problem. If the search was sorely based on a refusal to permit to consent, then I think it would be more unusual to say that was proper. But it might not be precedent just for that. But but why can't a refusal of a person to give their name along with the other evidence that the officer thinks can see the pack appears heavy and sees bulges in it? And this may not be true, but this is what Officer Dixon testified to. He testified. I saw the pack appeared heavy. Mr. Kroll was straining, you know, and how he was carrying it. So it was a heavy pack. I saw bulges at the bottom of it could be like coffee cans or pipe. I've had a little bit of training. I know there's such a thing as a pipe bomb or a coffee can bomb. I know that some explosives were missing that were stolen in the southern part of Idaho. And I look at all this and then I ask this guy, what's his name? And he won't give me his name. Why can't all those factors put together give probable cause to want to search a backpack when it's being brought into the proximity of hundreds of people in an incendiary setting where there's been threats of violence from groups that on occasion, both the Aryan Nation and the J.D.L. At least are alleged to have engaged in terrorist type activities. First of all, I think there is a lot of dispute as to those facts. We did a demonstration with exactly what was in the backpack. Weighed about six pounds. Well, secondly, I understand those are all disputed. Sure. And I would rule for you in a second if the district judge had tossed this case out on summary judgment and hadn't let you go to a jury. But since you had a right to on behalf of your client to pitch this case to a jury and the jury found for the defendants, as I understand the law, we have to look at all the facts. Giving the government all that, you know, given Officer Dixon, all the inferences and accepting what he said is true, whether it's true or not. That's how we have to view it after a jury verdict. So how do you how do you show a lack of probable cause in that procedural setting where where the thing went to the jury? OK. First of all, this court and the Supreme Court held in Hollander v. Lawson that failure to give a name and failure to give I.D. is not probable cause for anything. Well, they said I thought we said in this other case that you can't arrest a person for failure to give to give their name like that. But I don't know if they said that you can't consider it as one factor. I don't believe actually that there was discussion, but it was considered not to be probable cause. And I think you're right for to arrest, to arrest. So if you go up to someone, there's going to be a protest and the police walk up to someone and and they just say, what's your name? Or will you let me search you? And the person says, no, buzz off. The police can't arrest them for that. Correct. OK. But if they have other evidence that makes them suspicious that there could be a bomb in a pack and they say to somebody, what's your name? And the person won't tell them their name. Is that are you saying they can't consider that that the person won't give their name? I'm saying it didn't ring true because the same officer admitted to searching 15 other people at a demonstration where there were approximately 150 people. This officer admitted and claimed he had individualized probable cause to search every single one of them. It strains the bounds of credibility. OK, but then this is I'm back to thinking that's a good argument to put to the jury. But if the jury goes the other way, where does that leave us here? Well, the law is clear that it's still a consensual search that he asked him if he reasonably believed that there was a bomb in that pack. He wouldn't ask. He would have taken the pack. He would have called the bomb squad. He would have cordoned off the area. He wouldn't have just left the backpack, arrested him and then casually gone through the pack in the middle of a crowd of people. I think there is no reasonable basis for a jury to believe that Officer Dixon really believed there was a bomb in the pack. And the type of explosive he's talking about couldn't fit in the backpack and exploded. It was ammonium nitrate. It's the chemical fertilizer they use for the federal building. You need at least 100 pounds of ammonium nitrate plus diesel fuel or gasoline plus a fuse. Did Dixon say he knew the explosives that were stolen or ammonium nitrate and not some other explosive? He cited the teletype and the teletype from Boise specifically said ammonium nitrate. OK, thanks. You've answered my question. I appreciate it. Thank you. And I think it is still a consensual search. He was asked. He was not told. And if he is asked the rules and the courts have bent over backwards to say that any time someone is asked, it's a consensual search and they have a right to refuse. It's interesting to be the civil rights lawyer arguing that search was consensual because usually it would be on the other side. But it clearly was. He was asked several times. Can we search your pack? If they're asking, he can say no. And if he can say no, then he can't be arrested for saying no. If you can arrest someone for saying no to a consensual search, then there is no consensual search. Appellants are asked or appellees are asking the court to break new ground and to find that there is no consensual search and that you can be arrested simply for asserting your Fourth Amendment rights. I want to go to Gary Beasick very quickly, just on the totality of it. There was no evidence presented that he had any intent to use his cane as a weapon. And the dispute came down to that. The officer continued to insist that he wasn't using it. We had a prescription. We presented a prescription for the cane. And the officer identified him, radioed his description, came to the scene, said, that's the guy, went to the jail and decided to charge him, charged him with. Are we talking about Turner? We're talking about Turner. I'm sorry. I'm so familiar with this case. After five years of officers with the arresting officer in turn. Well, we don't know who the arresting officer that we never identified. But Turner made the charging decision. It's not simply a matter of citing. He didn't make the arrest. He identified. He said we don't. It's the question of what's the arrest is the person who takes him into custody and transport the soling. The sole arresting officer. He didn't make a charging decision. Basic was sitting there uncharged. They admit they didn't know what he was doing there. He was identified by Turner. Turner decided to interview him, charged him with possession of a deadly weapon with intent to assault. And he and filed that charge and then processed him, cited him, did the police reports. The only thing he did not do was put the handcuffs on him and take him to jail. And I would like to reserve for rebuttal if I may sit down a minute. Fifteen minutes. Adams. Thank you, Your Honors. It is a pleasure to be before the court again. And I don't mind traveling from Coeur d'Alene to do it. The jury's verdict was supported by substantial evidence in the record. The trial court examined the record on the motion for judgment as a matter of law or judgment. The jury's verdict was supported by substantial evidence in the record. The trial court examined the record on the motion for judgment as a matter of law or judgment. The jury's verdict was supported by substantial evidence in the record. Well, for the arrest. I think Judge Gould specified quite clearly the number of factors that were available to Officer Dixon when he. But we still have the question of whether that's enough. And the jury decided it was. There is a. Juries don't describe, decide questions of law. That's up to us to decide. That's that's correct. But the issue of whether or not probable cause exists has been held to be a question of fact for the trier of fact. There is a line over which a court can say, well, this is clearly not probable cause. And therefore, you know, it doesn't matter what a jury does. Then there is the gray area in between. And then there's an area that is clearly proper for the jury to make that determination. And that's true. This court is going to have to decide, I guess, a couple of different things. One, whether there is was enough evidence in the in the first instance to let this even go to a jury. I think that's what the court is is referring to. And I think there is. And I think it goes down to the to the all of the factors Judge Gould mentioned in addition to various things. General situation is dangerous. That seems to be the most significant question. But that doesn't really point this particular individual is more dangerous than the rest. I mean, it's kind of a random search, basically. Well, I would disagree that it's a random search. A lot of people like backpacks. A lot of people had backpacks. As far as I know, only one person was arrested. And yes, there is a difference between a consensual search and a search that is that is mandated by law enforcement. And an officer can constitutionally ask anyone if they can look in a backpack. Mr. Hilda's, do you at least as to the law involving the question? Can I search? And if you and if you get a negative answer to that, that is not in and of itself probable. Correct. I don't I don't disagree with that. If if an officer asks and there is no probable cause, then a citizen is is perfectly within their rights to refuse to search, to walk off, to not give them any information whatsoever. Yes. Is there any case law? I wasn't able to find any. But is there any case law on the issue whether if a person refuses to give their name, that could be considered as a factor added to other things that support probable cause? I know there's we have authority in the Kerry case and some others saying you can't arrest someone for refusing to give their name. And I'm not aware of any, Your Honor. And I don't think that Officer Dixon in his testimony of trial really even focused on the fact that he weighed on that. But what he said was I thought I had probable cause because I saw the pack looked very heavy the way he was straining to carry it and shifting around. And I saw bulges at the bottom and I knew there were some explosives that were missing in the state. And that's basically all that he said. Well, I think. And I think maybe the court mentioned this, the incendiary nature of the entire day where there was threats in the press from groups that were after the Aryan nations. The Aryan nations has a history of violence and a propensity to attract violence. Officer Dixon did testify that he had two hours of explosives training, including recognition of different types of explosive devices such as coffee can bombs, pipe bombs. I guess the question is, in that type of a of a dangerous setting, if an observation of a person with a heavy pack with a couple of bulges in it is sufficient. To support probable cause to search the pack. Not without. Not without evidence that some explosives had been stolen in southern Idaho, that people were on their way up from southern Idaho for this parade. How do you answer the argument of Mr. Hilde is that the explosives were diammonium phosphate or some other ammonium nitrate ammonium nitrate. That they were ammonium nitrate, which can make a bomb, but it makes a bomb in a truck, normally not a backpack. Well, it makes the bomb in a truck, I suppose, if you want to take a whole building down. But I would suspect that a coffee can bomb filled with nails can do some damage to people. And I'm not sure that there was actually any evidence regarding what quantity was necessary to cause any damage or to create a danger. And I think what not only Judge Lodge, but the jury looked at and determined was that, sure, in the in retrospect, there was no coffee can bomb, but there was enough information there that gave Officer Dixon the right to search. And upon the refusal of that search to arrest for obstructing an officer. Yes, there are other cases that probably have a greater degree of probable cause. But I would assert there's a whole bunch of cases that have left. Am I right that that Officer Dixon did ask him his name and he refused to get that's correct. I think Dixon in his testimony didn't say he put any weight on that. But if that were relevant, could we put could we consider it? I think so. I think that was that is the totality of the circumstances as the court, I'm sure, is aware. The standard is what an objectively reasonable police officer at the scene under the totality of the circumstance knows and sees and observes. And I think that is part of the totality of the circumstance. What is your best case on an analog to these facts? I don't understand. Well, what's your best case that would support your view that there's enough facts here to establish probable cause? I don't know that I could cite to the court a particular case that is analogous in terms of your best case. What are you relying on primarily to justify? I'm relying on, OK, factual issues that the jury looked at would be the case. Right. Or the Ninth Circuit precedent. I'm not. I couldn't tell you. I was not looking at analogous cases. I was looking at the factors that are actually at undisputed and at least available in the record to the officer and general case precedent that a that this is an objective standard based on a reasonably prudent police officer. You're saying that you're agreeing with Mr. Hildreth on the law, that there has to have been evidence of individual individual suspicion that would give probable cause to think there might be something in this particular person's backpack. I think so. I think you're saying the factors here are sufficient. I think that's what I said. So what Dixon said in the context, he said it is sufficient. And plus, even though he didn't say anything about the name that might add something. Well, I think he did mention mention it, but it wasn't something he put emphasis on. But I. But you're not. There's not any case involving the search of a backpack that's comparable. Not that I'm aware of. Is there any authority as to whether the standard for what's required for probable cause is is saying different in the case where police are looking at the issue of interdiction of a crime rather than finding evidence that a crime is already committed? No, not that I'm aware of. I think the standard is the same. And there's no there's no established precedent that says we use a different standard. If the potential gravity of the harm is of something that might occur is greater than when it's smaller. In other words, there's no if you suspect there might be a bomb in a pack. It doesn't warrant a different probable cause standard than if you suspect there might be a handgun. My time is up, man. Not that I'm aware of. I believe the standard is the same. What a reasonably prudent officer would deem under the totality of the circumstances, if he would deem that there was the existence of probable cause that a crime had been committed or was being committed. And this is special needs kind of situation. You could probably make the whole crowd go through a metal detector is a dangerous situation. Rather than a case of particularized suspicion or probable cause. There are there are cases out there involving situations like that, I think because we're dealing with a public street that probably wouldn't work in our particular case. It's not a private football stadium or something of that nature. And I think we did address this leading up to the trial, but determined, I think, that it was it was not applicable in this case of the police didn't do it in this case anyway. Thank you, counsel. Your time is expired. The Hilda's. You have a little reserve time. Thank you, Your Honor. There were two factors that I wanted to come back to. First of all, there's the fact that Kroll, other than saying no, did not resist in any way. He didn't obstruct an officer in any way. He didn't physically resist. He didn't try to run away. He didn't try to hide his backpack. All he ever did when asked if he would submit to a search was to say no. And Officer Dixon described him as defiant when asked what the fight was. He said no. Isn't it a little dangerous, though, in a crowd control situation? If we say police can't or people can refuse to give their name. I mean, because you sort of want in this kind of a setting with the J.D.L. in the air. And was there was was there any evidence that there could be ammonium nitrate bomb in that size? Yeah, there was no evidence presented that there could be no. And there was evidence presented about the smell of ammonium nitrate, which is quite strong as fertilizer. You could apparently smell Tim McVeigh's truck for blocks. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Cudahy , O'scannlain, Gould